IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CLEVELAND NIXON, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | Civil Action No. 3:25-CV-3343-D |
| | § | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action arising from an insurance coverage dispute, plaintiffs Cleveland and Keisha Nixon (the "Nixons") move to compel the production of documents and to strike defendant Nationwide Mutual Insurance Company's ("Nationwide's") fifteenth and sixteenth affirmative defenses, or, in the alternative, for partial summary judgment. For the reasons that follow, the court grants in part and denies in part the motion to compel, denies the motion to strike and alternative motion for partial summary judgment, and denies the Nixons' request for expenses.

I

This lawsuit arises from the Nixons' claim for insurance coverage for hail and wind damage to their residential property ("Property") caused by a series of storms in March 2025. The Property was insured under a policy of insurance ("Policy") issued by Nationwide. The Nixons filed a claim ("2025 Claim") under their Policy, but Nationwide denied it, finding that various Policy exclusions applied. This lawsuit followed. The Nixons allege that

Nationwide failed to conduct an appropriate investigation and to provide an explanation for why their 2025 Claim was not paid, as required under Texas law. They sue Nationwide for violations of the Texas Insurance Code and the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), breach of contract, and breach of the duty of good faith and fair dealing.

Nationwide alleges in its amended answer, *inter alia*, affirmative defenses of prior settlement and release (fifteenth defense) and failure to segregate damages (sixteenth defense). The Nixons now move, in separate motions, to strike these affirmative defenses and to compel Nationwide to produce documents, including the complete underwriting file and insurance reserves information. Nationwide opposes both motions, which the court is deciding on the briefs, without oral argument.

II

The court begins with the Nixons' motion to strike Nationwide's fifteenth and sixteenth affirmative defenses.

A

Because Nationwide's fifteenth and sixteenth affirmative defenses relate to a prior insurance claim that the Nixons filed in 2021 ("2021 Claim"), the court sets out the pertinent facts that relate to that claim.

On February 17, 2021 the Nixons filed a claim under their Policy for interior water damage caused by a pipe that froze and burst during the February 2021 Winter Storm Uri. They later reported a garage leak that they attributed to roof damage from the winter storm,

and submitted an estimate seeking a full roof replacement. Nationwide retained ProNet Group ("ProNet") to evaluate the Nixons' roof. In an October 27, 2021 Report of Findings ("ProNet Report"), ProNet documented the existing physical conditions on the roof, including "cracked and slid tiles," and concluded that "[t]here is no damage to the roof of the residence from the February 2021 winter weather event." Ps. App. (ECF No. 22) at 52. Based on the ProNet Report, Nationwide issued a partial denial that concluded, *inter alia*, that damages to the roof or roof covering were not caused by the winter storm and, therefore, were not covered under the Policy.

The Nixons retained counsel on February 2, 2022, and, on March 30, 2022, invoked the Policy's appraisal provision. On November 1, 2022, while the appraisal was still pending, the Nixons sued Nationwide ("2022 Lawsuit") for breach of contract, unfair settlement practices, prompt payment of claims violations, and breach of the duty of good faith and fair dealing, alleging, *inter alia*, that "although new cracks due to the freeze were obvious on a number of the tiles on the roofing system, Nationwide represented the damage was excluded due to 'wear and tear.'" D. App. (ECF No. 28) at 290-91.

The appraisal panel issued an Final Appraisal Report on July 4, 2023 that stated, with respect to the Nixons' roof:

> The insured's appraiser stated that replacement of the roof was warranted due to ice damming which occurred during the freeze event. Upon arriving at the home, we observed the steep pitch of the roof and quickly agreed that ice damming was not likely. With this agreement in place, roof replacement and gutter replacement were not included in the final award estimate.

*Id.* at 300. On August 21, 2023 the Nixons entered into a Confidential Release and Settlement Agreement with Nationwide ("2023 Settlement") that, *inter alia*, discharged Nationwide from "all claims arising from damage to the Property that were or might have been asserted or made by [the Nixons] against [Nationwide]." *Id.* at 465. The Nixons filed the instant lawsuit on October 21, 2025. As noted above, the petition alleges that multiple storms in March 2025 caused extensive damage to the Nixons' roof, including numerous cracked, chipped, missing, and slipped roof tiles. Pet. (ECF No. 1-1) ¶ 16. In its amended answer, Nationwide asserts the following affirmative defenses:

> Fifteenth Defense
> <u>Prior Settlement and Release</u>
>
> Nationwide asserts that on August 21, 2023, Plaintiffs executed [the 2023 Settlement]. . . . To the extent Plaintiffs' present claim seeks recovery for damage to the same components or conditions of the Property that were the subject of, or could have been asserted in, the prior claim and were released, including any paid for but unrepaired damages to the Property—including but not limited to the roof, gutters, and downspouts—those claims are barred.
>
> Sixteenth Defense
> <u>Failure to Segregate Damages</u>
>
> Nationwide asserts that Plaintiffs have failed to segregate damages caused by covered damage to the Property under the Policy and causes of loss to the Property not covered under the Policy. This includes, but is not limited to, damage to the Property that remained, or was not properly or fully repaired, following a prior claim for property damage for which Plaintiffs reported an insurance claim to Nationwide. This prior claim for weather-related damages to the property included a claim arising out of a February 2021 winter freeze event to which Nationwide

> assigned claim number 582941-GL and under which Plaintiffs were paid a monetary settlement.

Ans. & Aff. Defenses ¶¶ 112-113 (paragraph numbering and bold font omitted).

The Nixons move to strike these affirmative defenses on the ground that they are insufficient as a matter of law. They contend that the 2023 Settlement could not have released claims related to a loss that occurred in March 2025; that it was fully and finally adjudicated through appraisal that there was no damage to the Nixons' roof related to the 2021 Claim; and that allowing these defenses "would force the parties to conduct written discovery and fact and expert depositions about a four-year-old claim that Nationwide already investigated, denied as to the roof, and resolved, only to prove what Nationwide's own file already establishes: that Nationwide found no storm damage to the roof in the [2021 Claim] and paid nothing for it," Ps. Br. (ECF No. 21) at 13.

B

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The decision to grant a motion to strike is within the court's discretion. *Jacobs v. Tapscott*, 2004 WL 2921806, at *2 (N.D. Tex. Dec. 16, 2004) (Fitzwater, J.), *aff'd on other grounds*, 277 Fed. Appx. 483 (5th Cir. 2008). "Both because striking a portion of a pleading is a drastic remedy, and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted." *Id.* (citing *FDIC v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993) (Cummings, J.)). "Although motions to strike a defense

are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982) (citations omitted).

C

The court in its discretion declines to strike Nationwide's fifteenth and sixteenth affirmative defenses.

With respect to Nationwide's fifteenth affirmative defense, whether the 2023 Settlement released Nationwide from future claims based on the Nixons' damaged roof tiles is a question that should be addressed on the merits, not in the context of a motion to strike. The court agrees that "[w]hether the roof contained pre-existing conditions, whether those condition[s] remained unrepaired, whether those same conditions are included in Plaintiffs' present replacement estimate, and what effect the prior settlement and release have on any overlapping claimed damages are substantive issues," D. Br. (ECF No. 27) at 11, that are more appropriately addressed in the context of summary judgment or trial than in the context of a motion to strike.

Regarding Nationwide's sixteenth affirmative defense, Nationwide posits that "segregation is a coverage issue arising from the insured's burden to prove covered damages," rather than an affirmative defense. *Id.* at 15-16; *see also, e.g.*, *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 198 (Tex. App. 2003, pet. denied) ("Because the insured can recover only for covered events, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured

carries the burden of proof."). Courts in this circuit have declined to strike the contents of a pleading that "are not a defense at all." *Hunter v. Navy Fed. Credit Union*, 2025 WL 220407, at *3 (N.D. Tex. Jan. 16, 2025) (Fitzwater, J.) ("[T]he contents of a pleading cannot be stricken as an 'insufficient defense' when, as here, they are not a defense at all."); *Godo Kaisha IP Bridge 1 v. Telefonaktiebolaget LM Ericsson*, 2022 WL 2055234, at *3 (E.D. Tex. June 6, 2022) (declining to strike "no equitable relief" and "lack of standing" affirmative defenses and noting that "'even if [pleaded defenses] are not technically "affirmative defenses," Plaintiff has arguably been given the advantage of a better understanding of aspects of [the defendant's] defense strategy' and can hardly claim to be a victim of unfair surprise." (citation omitted)); *Domain Prot., LLC v. Sea Wasp, LLC*, 2019 WL 6255733, at *4 (E.D. Tex. Nov. 22, 2019) ("Because Sea Wasp's decision to plead standing as an affirmative defense does not prejudice Domain Protection, the Court has permitted such pleadings before, and it is a drastic remedy to strike a pleading, the Court denies Domain Protection's Motion [to strike] Sea Wasp's first affirmative defense.").

Moreover, the Nixons' did not raise their "not a defense at all" argument until their reply brief, and this court routinely declines to consider new arguments raised for the first time in a reply brief. *See, e.g.*, *Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) ("[T]he court will not consider an argument raised for the first time in a reply brief." (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.))), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).

Accordingly, the court in its discretion denies plaintiffs' motion to strike Nationwide's fifteenth and sixteenth affirmative defenses.

III

The Nixons move, in the alternative, for partial summary judgment on Nationwide's fifteenth and sixteenth affirmative defenses.

A

When a summary judgment movant will not have the burden of proof on a claim or defense at trial, it can obtain summary judgment by pointing to the absence of evidence on any essential element of the nonmovant's claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Once the moving party does so, the nonmovant must go beyond its pleadings and designate specific facts to demonstrate that there is a genuine issue of material fact for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *TruGreen LandCare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

When the summary judgment movant will have the burden of proof on a claim or defense, however, the movant "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878

F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the movant must demonstrate that there are no genuine and material fact disputes and that the movant is entitled to judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

B

Plaintiffs contend in their alternative motion for partial summary judgment that there is no evidence that the February 2021 winter storm damaged their roof; that Nationwide cannot produce any evidence "that the peril it now says was 'released' ever damaged the roof," Ps. Br. (ECF No. 21) at 14; that there is no evidence that any part of the 2023 Settlement compensated them for roof damage; and that Nationwide "paid nothing for the roof, no roof indemnity formed part of the consideration for the release, and there is no 'paid for but unrepaired' roof damage to segregate or to bar," *id.* at 15.

Nationwide clarifies in its response that it "does not contend that the February 2021 winter weather event caused the roof conditions now at issue, nor does it contend that the 2023 Release prospectively extinguished damage from a separate storm event that did not occur until March 2025." D. Br. (ECF No. 27) at 17. Instead, it maintains that

> the record establishes that Plaintiffs sought a complete replacement of the same concrete-tile roof, expressly placed alleged roof damage at issue through appraisal and litigation, settled that litigation and executed a Release, did not replace the roof and have not otherwise documented any repairs to the damages previously observed, and now again seek the cost of replacing the entire roof and balcony repairs.

*Id.* Nationwide contends that those facts preclude summary judgment because they raise genuine issues concerning whether the Nixons' present demand includes physical conditions that predated the March 2025 loss, were previously asserted or resolved, or otherwise must be segregated from any damage actually caused by a covered March 2025 event.

C

The court begins with Nationwide's fifteenth affirmative defense: release. The 2023 Settlement releases "all claims arising from damage to the Property that were or might have been asserted . . . at any time up until the execution of [the 2023 Settlement]." D. App. (ECF No. 28) at 465-66. Based on evidence in the summary judgment record, a reasonable jury could find that plaintiffs submitted a claim in 2021—the 2021 Claim—based on damage to their roof, that the 2025 Claim is based on the same, preexisting roof damage that they included in their 2021 Claim, and that the 2023 Settlement released any claims arising from this same preexisting roof damage. Because genuine issues of fact exist regarding whether the roof damages included in the 2025 Claim were released, the court denies the Nixons' motion for partial summary judgment.[1]

---

[1]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall.*

The court also denies the Nixons' motion for partial summary judgment with respect to the issue of segregation of damages (which Nationwide has incorrectly pleaded as an affirmative defense). As the court has stated above, "the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof." *Comsys Info. Tech. Servs., Inc.*, 130 S.W.3d at 198. The Nixons neither argue nor adduce evidence that would establish beyond peradventure that the damages they included in their 2025 Claim were attributable solely to a covered event.

## IV

The court now turns to the Nixons' motion to compel. Before turning to the parties' arguments, the court will set out some additional relevant background information.

### A

On January 19, 2026 the Nixons served their first set of requests for production ("RFPs"), seeking the underwriting file regarding the Property (RFP Nos. 3, 4, 5, and 6) and Nationwide's reserves information (RFP Nos. 17, 44, 63, and 72). Nationwide objected to these RFPs on various grounds.

After reviewing Nationwide's objections, the Nixons sent a June 17, 2026 letter addressing perceived deficiencies in Nationwide's discovery responses. They followed up on August 21, 2026. Nationwide contends that it had recently addressed materially similar

---

*Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

discovery issues in another case and, when plaintiffs filed their August 28, 2026 motion to compel, it "was working to obtain authority to resolve those issues on substantially the same terms previously agreed to in [the other case]." D. Br. (ECF No. 24) at 3.

On September 4, 2026 Nationwide offered to produce all inspection reports and inspection photographs in the underwriting file and to produce its pre-anticipation of litigation indemnity reserves (through June 11, 2025), subject to the entry of a protective order. The Nixons agreed to the protective order, which the court entered on September 21, 2026, but they do not accept Nationwide's proposed limitation of the underwriting and reserves production.

B

Under Rule 26(b)(1), "[u]nless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." And under Rule 37(a)(3)(B), "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" when the party from whom discovery is sought fails to produce requested documents or respond to an interrogatory or request for admission. The burden is on the party resisting discovery—here, Nationwide—to establish why the motion to compel should not be granted. *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (Ramirez, J.); *see also Lozano v. Dorel Juv. Grp.*, 2010 WL 11619687, at *1 (N.D. Tex. May 26, 2010) (Means, J.) ("Generally, the burden is on the party seeking to avoid compliance with a discovery request to show that the request is improper[,]" such that "in the context of

a motion to compel, the party who opposes discovery must 'show specifically how [the request] is not relevant or how [the request] is overly broad, burdensome, or oppressive.'" (second and third alterations in original) (quoting *McLeod, Alexander, Powell and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990))).

C

The court begins with RFP Nos. 3, 4, 5, and 6,[2] which seek information in the underwriting file for the Property.

1

Nationwide objects on relevance grounds to the Nixons' request for the production of its entire underwriting file for the Property. It contends that the Nixons' asserted need for the underwriting file is tied to one discrete factual issue—the pre-loss physical condition of the Property; that the underwriting inspection reports and photographs it has agreed to produce "speak directly to that issue," D. Br. (ECF No. 24) at 9; that the Nixons have not made a particularized showing that the remainder of Nationwide's underwriting file is relevant or proportional to the needs of the case; and that "any order compelling production

[2]RFP No. 3 requests "[t]he underwriting file regarding the Plaintiffs['] Property and Policy." Ps. App. (ECF No. 19-1) at 41. RFP No. 4 seeks "[a]ll documents issued within the last three (3) years in the underwriting files referring to the Policy, including the file folders in which the underwriting documents are kept and drafts of all documents in the file." *Id.* RFP No. 5 requests "[a]ll documents in the underwriting files referring to the Policy issued at least (3) years prior to the present, that you contend affect coverage or damages under the Policy." *Id.* And RFP No. 6 seeks "[a]ll your written procedures, policies, manuals, guidelines, risk classifications and rules that affected the underwriting or evaluating the condition of the Property which were in effect on any date you issued or renewed the Policy." *Id.*

should be limited to production of the portions of the underwriting file that bear directly on Plaintiffs' stated theory of relevance, rather than compelling production of the entire underwriting file," *id.* at 7.

The Nixons argue in reply that Nationwide's amended answer alleges that roof, gutter, and downspout damage from the 2021 Claim was paid for but unrepaired; that Nationwide continued to insure the Property under the same Policy number after the 2021 Claim and after 2023 Settlement; that "[w]hat its underwriters recorded at each renewal—roof damage noted, repairs required, re-inspections—is direct evidence on that defense and will not appear in inspection photographs," Ps. Reply (ECF No. 32) at 7; and that Nationwide's log shows underwriting communications on April 28, 2025 and May 6, 2025 that may shed light on whether Nationwide handled the 2025 Claim in bad faith.

2

The court holds that RFP Nos. 3, 4, 5, and 6 seek information relevant to the Nixons' claims in this lawsuit and to Nationwide's defenses. This court has previously held that underwriting materials may shed light on the interpretation of an insurance policy and whether the insurer handled the insured's claim in bad faith. *See, e.g.*, *Panza v. Travelers Pers. Ins. Co.*, 2026 WL 1345981, at *5 (N.D. Tex. May 14, 2026) (Fitzwater, J.); *Mr. Cooper Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2026 WL 773091, at *3 (N.D. Tex. Mar. 19, 2026) (Fitzwater, J.). And Nationwide's assertions in this case that the Nixons' roof damages "were non[-]storm related and due to normal wear, tear, deterioration, thermal cracking/stress, slippage, footfall and golf balls," Ps. App. (ECF No. 19-1) at 27, and

that some or all of plaintiffs' alleged loses arose from their failure to completely repair the Property following their 2021 Claim,[3] make relevant information about Nationwide's assessment of the Property before the Policy was issued, in connection with the 2021 Claim, and after the 2023 Settlement. *See, e.g.*, *Panza*, 2026 WL 1345981, at *5-6 (materials that reference the insurer's assessment of the condition of the property, its evaluation of what risks it expected to cover in the policy, and how it interpreted the various policy terms are relevant); *Islamic Servs. Found. v. Phila. Indem. Ins. Co.*, 2026 WL 249016, at *3 (N.D. Tex. Jan. 30, 2026) (McKay, J.) ("PIIC declined the claim based on its conclusion that the damage to ISF's property preceded its coverage, making relevant information about the pre-policy condition of the property, [steps] PIIC took to ascertain its condition, and its practices with respect to the assessment of properties when issuing a policy.").

The court also concludes, however, that the Nixons' requests should be narrowed because they are overbroad. RFP Nos. 3, 4, 5, and 6 should be confined to seek materials that reference Nationwide's assessment of the condition of the Property and its "evaluation of what risks it expected to cover in the policy and how it interpreted the various policy terms." *Panza*, 2026 WL 1345981, at *6 (quoting *Tim Long Plumbing, Inc. v. Kinsale Ins. Co.*, 2020 WL 6559869, at *5 (E.D. Tex. Nov. 9, 2020)).

Accordingly, RFP Nos. 3, 4, 5, and 6 should be narrowed according to the foregoing guidance.

---

[3]*See* Am. Ans. ¶¶ 96, 112, and 113.

D

The court next considers RFP Nos. 17, 44, 63, and 72,[4] which seek Nationwide's reserves information.

1

Nationwide has agreed to produce its indemnity reserves established before litigation was reasonably anticipated, subject to the entry of a protective order, and has identified June 11, 2025 (the date Nationwide received plaintiffs' counsel's letter of representation) as the reasonable anticipation-of-litigation date. Nationwide opposes this request for expense or litigation reserve information, contending that plaintiffs have not established the relevance of Nationwide's separate expense reserves—which do not represent Nationwide's valuation of the amount potentially owed to plaintiffs under the Policy—or its reserves after anticipation of litigation.

Plaintiffs reply that they are seeking to compel reserves set between June 11, 2025 (the date on which Nationwide cut off its production) and October 21, 2025 (the date on which this lawsuit was filed). They contend that this 132-day period includes Nationwide's receipt of plaintiffs' pre-suit notice, which quantified the claim and gave Nationwide the

[4]RFP No. 17 seeks "[a]ll documents reflecting the assignment, change, or application of litigation reserves to the Claim." Ps. App. (ECF No. 19-1) at 41. RFP No. 44 requests "[t]he documents reflecting reserves applied to the Claim." *Id.* at 43. In RFP No. 63, plaintiffs seek "[a]ll documents reflecting the assignment or change of litigation reserves set on the Claim." *Id.* at 44. And RFP No. 72 requests "[a]ny documents or communications reflecting internal reserves set for the Claim up through the filing of this litigation." *Id.* at 45.

statutory opportunity to re-inspect and pay; that a letter of representation "does not turn an adjuster's reserve entries into work product," Ps. Reply (ECF No. 32) at 8; and that Nationwide's pre-suit expense reserves are the best estimate of the eventual cost of a claim and "[w]hether Nationwide reserved to pay the Nixons or to pay consultants after their pre-suit notice is exactly that evidence," *id.* at 9 (footnote omitted).

2

"Loss reserves are an insurance company's best estimate of the eventual cost of a claim, including both the cost of indemnifying the insured and of adjusting the claim." *LEV Invs., Inc. v. Princeton Excess & Surplus Lines Ins. Co.*, 350 F.R.D. 86, 89 n.1 (N.D. Tex. 2025) (Rutherford, J.) (quoting *O'Donnell v. Avis Rent A Car Sys. LLC*, 2021 WL 5282694, at *3 (N.D. Tex. Apr. 14, 2021) (Toliver, J.)). This court has repeatedly held that loss reserves, including expense reserves, are relevant to claims of bad faith. *Id.* at 89 ("Numerous courts within the Fifth Circuit have held that loss reserves are relevant to claims of bad faith." (citing cases)); *see also Swicegood v. Med. Protective Co.*, 2004 WL 1698285, at *3-4 (N.D. Tex. July 29, 2004) (Fitzwater, J.) (holding that reserve information is discoverable as relevant to claim that insurer engaged in unfair settlement practices). This is because loss reserves "could tend to show that Defendant[] knew or should have known that [its] liability was reasonably clear, yet still denied full payment of the award." *LEV Invs., Inc.*, 350 F.R.D. at 90 (citing *Trinity E. En., LLC v. St. Paul Surplus Lines Ins. Co.*, 2013 WL 12124022, at *2 (N.D. Tex. Mar. 8, 2013) (Cureton, J.)). The court concludes that

information regarding reserves set up until this lawsuit was filed on October 21, 2025[5] is relevant to the Nixons' claims in this case, and Nationwide has not met its burden to establish otherwise. Nor does Nationwide assert any valid claim of privilege or work product protection as to its loss reserves.

Accordingly, the court grants plaintiffs' motion to compel responses to RFP Nos. 17, 44, 63, and 72.

E

1

Nationwide has produced some documents related to the 2021 Claim but has withheld the following categories of documents based on the work product doctrine: (1) communications between Nationwide and experts retained by Nationwide to consult regarding matters at issue in the anticipated litigation concerning the 2021 Claim; (2) communications between Nationwide and retained counsel concerning the 2021 Claim and the related anticipated or pending litigation[6]; (3) internal claim notes and reports prepared after Nationwide reasonably anticipated litigation concerning the 2021 Claim that reflect litigation-related evaluations, communications, or mental impressions of Nationwide representatives and/or information prepared to assist Nationwide and its counsel in

---

[5]Plaintiffs clarify in their reply brief that they do not seek to compel reserves set after this lawsuit was filed. *See* Ps. Reply (ECF No. 32) at 8.

[6]Plaintiffs state in their reply that they do not seek Nationwide's communications with its retained counsel. *Id.* at 10.

connection with that litigation; and (4) the December 12, 2022 claim summary, which was generated in connection with Nationwide's defense of the then-pending litigation and in furtherance of Nationwide's attorney representation concerning the 2021 Claim. D. App. (ECF No. 25) at 107.

The Nixons move to compel the production of these documents on the ground that they could not have been prepared in anticipation of a lawsuit over a 2025 loss. Nationwide responds that the Nixons have failed to confer under Rule 37(a)(1) with respect to this argument; the materials plaintiffs seek were prepared in anticipation of the separate litigation arising from the Nixons' 2021 Claim; and the work product doctrine continues to protect documents prepared in anticipation of litigation concerning the 2021 Claim, even if that claim was ultimately settled.

2

"[A] proper Rule 37(a) motion to compel . . . must include a certification that the movant has made a good faith effort to meet and confer regarding the specific discovery disputes at issue, and to resolve them without court intervention, as required by Federal Rule of Civil Procedure 37(a)(1) and Northern District of Texas Local Civil Rule 7.1." *Samsung Elecs. Am. Inc. v. Chung*, 325 F.R.D. 578, 594 (N.D. Tex. 2017) (Horan, J.); *accord* Rule 37(a)(1) ("The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."). "When a motion to compel addresses a number of matters, a good faith effort to confer typically requires that the parties

discuss *each matter* in good faith to comply with conference requirements." *Okla. Hosp. Med. Physicians, LLC v. Gottlieb LLC*, 2026 WL 2123119, at *4 (N.D. Tex. July 22, 2026) (Fitzwater, J.) (quoting *Brown v. Bridges*, 2015 WL 11121361, at *4 (N.D. Tex. Jan. 30, 2015) (Solis, C.J.)).

The court concludes that "further delay in addressing the motion[] to compel would not comport with the overriding principle set forth in Fed. R. Civ. P. 1 that the courts construe and administer the Federal Rules of Civil Procedure 'to secure the just, speedy, and inexpensive determination of every action and proceeding.'" *Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 288 (N.D. Tex. 2017) (Horan, J.) (quoting *Brown*, 2015 WL 11121361, at *5); *see also Brown*, 2015 WL 11121361, at *5 ("A failure to satisfy conference requirements does not, however, mandate summary denial of their motions because the Court retains discretion to 'waive strict compliance with the conference requirements' and to consider the motions on their merits." (citation omitted)).

The Nixons contend in their reply that, on September 11, 2026, the parties discussed whether the work product doctrine survived the 2023 Settlement, that the parties are at an impasse with respect to this issue, and that "denial—rather than decision—would only produce a second round of identical briefing," so the court should reach the merits. Ps. Reply (ECF No. 32) at 6. Because it appears that the parties have now conferred regarding the issue of work product protection with respect to the 2021 Claim, the court will not deny the motion to compel the withheld documents on the basis that the Nixons failed to meaningfully confer with Nationwide.

3

The federal work product protection found in Rule 26(b)(3) provides for the qualified protection of documents and tangible things prepared by or for a party or that party's representative "in anticipation of litigation or for trial." Rule 26(b)(3). Determining whether a document was prepared in anticipation of litigation is a "slippery task," *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982), and requires a fact intensive analysis to determine whether "the primary motivating" purpose behind the creation of the document was to aid in possible future litigation, *see In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000); *United States v. Davis*, 636 F.2d 1028, 1039-40 (5th Cir. Unit A Feb. 1981).

"Like all privileges, the work product doctrine must be strictly construed." *Mims v. Dallas Cnty.*, 230 F.R.D. 479, 484 (N.D. Tex. 2005) (Kaplan, J.) (citing cases). "The burden is on the party seeking work product protection to show that the materials at issue were prepared by its representative in anticipation of litigation or for trial." *MC Trilogy Tex., LLC v. City of Heath, Tex.*, 2024 WL 346512, at *9 (N.D. Tex. Jan. 29, 2024) (Fitzwater, J.) (citing cases). Once this initial burden is met, a party seeking disclosure of ordinary work product[7] must demonstrate both "a substantial need for the information and an inability to

[7]The other type of work product is opinion work product, which is governed by a higher standard but not involved here. Opinion work product includes "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Rule 26(b)(3)(B). A party seeking discovery must demonstrate "a compelling need for the information." *SEC v. Brady*, 238 F.R.D. 429, 443 (N.D. Tex. 2006) (Ramirez, J.) (citing *Varel v. Banc One Cap. Partners, Inc.*, 1997 WL 86457, at *5

obtain the substantial equivalent without undue hardship." *SEC v. Brady*, 238 F.R.D. 429, 443 (N.D. Tex. 2006) (Ramirez, J.); Rule 26(b)(3)(A)(ii) (providing that party ordinarily may not discover documents and tangible things prepared in anticipation of litigation or for trial by or for another party or its representative, but, subject to Rule 26(b)(4), "those materials may be discovered if . . . the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means").

4

As a preliminary matter, the court must determine the date on which Nationwide first anticipated litigation. In its opposition response, Nationwide relies on the declaration of Property Claims Manager Matthew Hillstrom ("Hillstrom"), who avers that Nationwide reasonably anticipated litigation after it received a February 2, 2022 letter of representation from the Lundquist Law Firm advising of its representation of Keisha Nixon in connection with the 2021 Claim. He states that "[a]t that time, there was an unresolved dispute concerning Nationwide's adjustment and coverage determination under the [2021] Claim"; that,"[i]n light of the Nixons' retention of counsel and the circumstances of the existing dispute, Nationwide reasonably anticipated that litigation concerning the [2021] Claim was likely"; and that the withheld communications between Nationwide and its experts "were not

(N.D. Tex. Feb. 25, 1997) (Boyle, J.)); *see also In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982) (requiring "higher showing" for opinion work product and noting that "[s]ome courts have [even] provided an almost absolute protection for such materials").

created as part of Nationwide's routine adjustment of the claim and would not have been created in substantially the same form, absent the anticipated litigation." D. App. (ECF No. 25) at 106-07.

"[C]ourts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies." *Lanelogic, Inc. v. Gr. Am. Spirit Ins. Co.*, 2010 WL 1839294, at *5 (N.D. Tex. May 6, 2010) (Kaplan, J.) (alteration in original) (quoting *Douga v. D & A Boat Rentals, Inc.*, 2007 WL 1428678 at *4 (W.D. La. May 10, 2007)). "[E]ven though litigation is pending or may eventually ensue[,] [this] does not cloak such routinely generated documents with work product protection." *Id.* (first alteration in original) (quoting *Piatkowski v. Abdon Callais Offshore, L.L.C.*, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000)). "In the context of an insurance dispute, the question [] whether documents are work product often depends on whether the insurer can point to a definite shift from acting in its ordinary course of business to acting in anticipation of litigation." *Id.* (citation omitted).

Nationwide has not satisfied its burden of establishing that the communications with its experts concerning the 2021 Claim or its internal claim notes and reports (to the extent that these documents were prepared before the Nixons filed the 2022 Lawsuit) were prepared for the primary purpose of aiding in litigation as opposed to Nationwide's coverage determination. *See id.* at *6. In his declaration, Hillstrom states only that Nationwide "received a letter of representation." D. App. (ECF No. 25) at 106. He does not set out the contents of that letter or state that it threatened litigation. Nor does Hillstrom explain,

beyond the conclusory assertion that the withheld documents "were not created as part of Nationwide's routine adjustment of the claim," *id.* at 107, how the communications and documents prepared prior to the Nixons' filing the 2022 Lawsuit differed from those that would have occurred or been prepared in the normal course of Nationwide's business and in the absence of anticipated litigation.

Accordingly, the court grants the Nixons' motion to compel the production of the documents withheld on the basis of the work product protection to the extent that they were prepared before the 2022 Lawsuit was filed. Nationwide is not required to produce withheld documents that were prepared after November 1, 2022 or any documents that contain communications between Nationwide and its retained counsel.[8]

V

In their reply brief, the Nixons request an award of their reasonable expenses. Rule 37(a)(5)(C) provides that, if a motion to compel is "granted in part and denied in part," the court may "apportion the reasonable expenses for the motion." But "the court must not order this payment if . . . the opposing party's nondisclosure, response, or objection was substantially justified[.]" Rule 37(a)(5)(A). "A motion is 'substantially justified' if there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Zenith Ins. Co. v. Tex. Inst. for Surgery, L.L.P.*, 328 F.R.D. 153, 162 (N.D. Tex. 2018) (Horan, J.) (brackets omitted). (citation omitted)

---

[8]Nor is Nationwide required to produce any opinion work product. *See supra* note 7.

Although the court is granting the Nixons' motion in part, it concludes under the present circumstances that the parties should bear their own fees and expenses. Because the Nixons did not request their expenses until they filed their reply brief, Nationwide has not had an opportunity to present arguments in opposition to this request. And the court cannot conclude on the present briefing that Nationwide's position with respect to the various discovery issues was not "substantially justified."

* * *

Accordingly, for the reasons explained the court grants in part and denies in part plaintiffs' motion to compel, denies plaintiffs' motion to strike and alternative motion for partial summary judgment, and denies plaintiffs' request for expenses.

**SO ORDERED**.

November 9, 2026.

SIDNEY A. FITZWATER
SENIOR JUDGE